# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATASHA S. SHUMATE, NAERA "NONNI" SHUMATE, a minor, and ERIC DAVIS,** | : | **No. 3:08cv1316** |
| **Plaintiffs** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **TWIN TIER HOSPITALITY, LLC individually and t/a/d/b/a, CLARION HOTEL; SCRANTON HOSPITALITY, LLC, individually and t/a/d/b/a CLARION HOTEL; CHOICE HOTELS INTERNATIONAL, INC.; and LISA PIERCE,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are defendants' motion to dismiss (Doc. 15) and motion for summary judgment (Doc. 24).  Having been fully briefed, the matter is ripe for disposition.

## I.  BACKGROUND

### A. Factual Background

The instant action arises from an incident that occurred on or about Wednesday, July 12, 2006, at the Clarion Hotel on Meadow Avenue in Scranton, Pennsylvania. (Plaintiffs' Amended Complaint (Doc. 10)(hereinafter "Amend. Comp.") at ¶ 24).  Plaintiffs Eric Davis, his fiancé Natasha Shumate, and their minor

child Naera Shumate were in the Scranton area visiting family and looking at property.  (Id. at ¶ 25).  Each plaintiff is African-American.  (Id. at ¶ 24).

Seeking overnight accommodations, plaintiffs went to the Clarion Hotel.  (Id.)  When they arrived, Eric Davis "went inside the Clarion Hotel and inquired about room availability for himself, his fiancé, and his minor child. [Natasha] Shumate stayed outside in the car with [their] daughter."  (Id. at ¶ 27).  Davis spoke with the front desk clerk, Defendant Lisa Pierce, who told him that there were no rooms available and directed him to the nearby Comfort Suites on Montage Mountain Road in Moosic, Pennsylvania.  (Id. at ¶ 28).  Plaintiffs took Pierce's suggestion and proceeded to the Comfort Suites.  (Id. at ¶ 29).  There were no rooms available at the Comfort Suites, but the clerk there told Davis she knew the Clarion Hotel had rooms available and suggested plaintiffs seek accommodations there.  (Id.)  Davis asked her to call to confirm that information since plaintiffs had just come from the Clarion.  (Id.)  The clerk called and confirmed that there were fifty-two rooms available at the Clarion Hotel.  (Id. at ¶ 30).

Plaintiffs returned to the Clarion Hotel, again seeking overnight accommodations.  (Id. at ¶ 31).  Plaintiffs' amended complaint (Doc. 10) and affidavits later submitted with the plaintiffs' answer (Doc. 27) to defendants' statement of facts supporting summary judgment (Doc. 26) provide slightly different chronological accounts of the events following plaintiffs' return to the Clarion Hotel.  Compare (Amend. Comp. at ¶¶ 31-34), with (Affidavit of Eric Davis (Doc. 27,

2

Attachment A)(hereinafter "Davis Affidavit") at ¶¶ 14-16), and (Affidavit of Natasha Shumate (Doc. 27, Attachment B)(hereinafter "Shumate Affidavit") at ¶¶ 12-14).

According to plaintiffs' amended complaint, Davis entered the Clarion Hotel first. (Id. at ¶¶ 31-33). When he entered, a new clerk, Ms. Demarese "Dee" Dinardo, was at the front desk. (Id. at ¶ 32). Davis asked to speak with the clerk who had been at the desk previously but was told she – Pierce – was no longer there. (Id. at ¶ 32). Davis then told Dinardo that he would like to rent a room and she acknowledged that rooms were available. (Id.) After Dinardo confirmed that rooms were in fact available, Pierce – who was still at the hotel – appeared from a back room and "[a]t this same time, [Natasha] Shumate and the couple's minor daughter, Naera Shumate entered the Clarion Hotel[.]" (Id. at ¶¶ 32-33). Plaintiffs assert that "[d]uring this same time frame," three white males entered the Clarion Hotel, asked to rent a room, and were provided one without hesitation by the staff. (Id. at ¶ 34).

While the amended complaint asserts that Davis entered the Clarion first, the affidavits submitted by Eric Davis and Natasha Shumate each state that all three plaintiffs entered the Clarion Hotel together and that Natasha and Naera Shumate were present for the dialogue between Davis and Dinardo and that Natasha and Naera witnessed the three white males enter, request a room, and receive one without hesitation. (Davis Affidavit at ¶¶ 14-16); (Shumate Affidavit at ¶¶ 12-14).

Following both Dinardo's confirmation of the fact that there were rooms

available at the Clarion and Natasha and Naera Shumate's entry into the Clarion

Hotel, a confrontation occurred between Pierce and Davis, which Natasha and

Naera Shumate witnessed.  (Amend. Comp. at ¶¶ 33-36); (Davis Affidavit at ¶ 18);

(Shumate Affidavit at ¶¶ 15-16).  According to plaintiffs' complaint,

> [u]pon seeing Defendant Lisa Pierce appear, Mr. Davis stated, he had just called and as back to obtain a hotel room.  Mr. Davis stated to Lisa Pierce, "Why did you tell me there was no room?", to which Lisa Pierce replied, "There was a cancellation."  Mr. Davis replied, "You had [fifty-two] cancellations?" to which Lisa Pierce replied, " I don't have to explain anything to you.  Get out of my hotel."  Mr. Davis then asked, "Did you say there were suddenly no rooms available because I was black?", to which Lisa Pierce replied, "Yes."

(Amend. Comp. at ¶ 35).

The account of the verbal exchange between Davis and Pierce provided in the

complaint is consistent with the account given by Davis and Shumate in their

affidavits.  See (Davis Affidavit at ¶ 17); (Shumate Affidavit at ¶ 15).  The affidavits

also state explicitly that all three plaintiffs were present for and heard the

confrontation between Davis and Pierce.  See (Davis Affidavit at ¶ 17) ("This entire

exchange was done in the presence of , and was seen, heard, witnesse[d], and

experienced by myself, my fiancé Natasha Shumate, and my minor daughter Naera

Shumate.")

**B. Procedural Background**

Plaintiffs Eric Davis, Natasha Shumate, and Naera Shumate each assert three

claims against defendants.  (Amend. Comp. At ¶¶ 54-66).  Each plaintiff asserts (1)

a claim under 42 U.S.C. § 1981 for racial discrimination in the making and

enforcement of a contract, (2) a claim under 42 U.S.C. § 2000a for racial discrimination in the provision of public accommodations, and (3) for intentional infliction of emotion distress ("IIED"). (Id.)

Defendants Twin Tier Hospitality, LLC ("Twin Tier"), Scranton Hospitality, LLC, and Lisa Pierce moved for dismissal (Doc. 15) and Defendant Choice Hotels International, Inc. ("Choice Hotels") moved for summary judgment (Doc. 24) on Natasha and Naera Shumate's claims under section 1981 and section 2000a. Defendants argue that Natasha and Naera Shumate never attempted to enter into a contract with defendants nor attempted to avail themselves of the full benefits and enjoyment of defendants' public accommodations and, therefore, no violation of section 1981 or section 2000a could have occurred. See (Defendants' Brief Supporting Motion to Dismiss (Doc. 15)(hereinafter "Def's. MTD Brf.") at 7-11); (Defendant's Brief Supporting Motion for Summary Judgment (Doc. 24)(hereinafter "Def's. MSJ Brf.") at 6-10); (Defendants' Reply Brief in Support of Motion to Dismiss (Doc. 23) (hereinafter "Def's. MTD Reply Brf.") at 2-4); (Defendant's Reply Brief in Support of Motion for Summary Judgment (Doc. 30)(hereinafter "Def's. MSJ Reply Brf.") at 2-3).

Additionally, Twin Tier, Scranton Hospitality, and Lisa Pierce moved for dismissal and Choice Hotels moved for summary judgment on plaintiffs' claims for intentional infliction of emotional distress. Defendants challenge plaintiffs' IIED claims with three alternative arguments. First, defendants contend that plaintiffs'

IIED claims arise from the same factual circumstances as plaintiffs' statutory discrimination claims and therefore the IIED claims are preempted by the statutory claims. <u>See</u> (Def's. MTD Brf. at 13-14); (Def's. MSJ Brf. at 12-13); (Def's. MTD Reply Brf. at 4-5); (Def's. MSJ Reply Brf. at 4-5). Second, defendants argue that all three IIED claims fail because the challenged conduct was not "extreme and outrageous" and plaintiffs, therefore, cannot establish the necessary elements of the tort. <u>See</u> (Def's. MTD Brf. at 14-16); (Def's. MSJ Brf. at 13-15); (Def's. MTD Reply Brf. at 5); (Def's. MSJ Reply Brf. at 5). Third, defendants argue that even if defendants' conduct was extreme and outrageous, Natasha and Naera Shumate's IIED claims fail because neither experienced any such conduct by defendants. <u>See</u> (Def's. MTD Brf. at 16-17); (Def's. MSJ Brf. at 15-16); (Def's. MTD Reply Brf. at 5); (Def's. MSJ Reply Brf. at 5).

## II. JURISDISCTION

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000a, we have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

6

III of the United States Constitution.").

## III.  STANDARD OF REVIEW

## A. Motion to Dismiss

When a defendant files a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), this court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).

A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The Supreme Court has confirmed that although FED. R. CIV. P. 8(a)(2) does not require " 'detailed factual allegations'," it does require plaintiff to plead sufficient facts to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]' " Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Neither mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" are sufficient to withstand a motion under FED. R. CIV. P. 12(b)(6).  A valid pleading under "[Rule 8] requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556

n.3).  As a threshold matter, the plain statement of the facts forming the grounds of the plaintiff's complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.' " Id. (citing Twombly, 550 U.S. at 557) (alteration in original).  In order to state a valid claim and survive a motion to dismiss, the "complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.' " Phillips, 515 F.3d at 232 (quoting Twombly, 550 U.S. at 556 n.3).

In addition to the facts pled in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

## B. Motion for Summary Judgment

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

8

there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>Int'l Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

## IV. DISCUSSION

### A. Natasha and Naera Shumate's Claims Asserted Under 42 U.S.C. § 1981

Plaintiffs Natasha and Naera Shumate assert that "the actions of the Defendants constitutes a deprivation of [their right] to make and enforce contracts" in violation of 42 U.S.C. § 1981. (Amend. Comp. at ¶ 57). Seeking either dismissal or

summary judgment on Natasha and Naera Shumate's Section 1981 claims, defendants assert that "it is self-evident that if Natasha and Naera did not each attempt to enter into a contract to rent a room for themselves, then Defendants cannot have denied any such attempt." (Def's. MTD Brf. at 8); (Def's. MSJ Brf. at 7).

To state and sustain a claim under Section 1981, the plaintiffs must allege and prove (1) that the plaintiff is a member of a racial minority, (2) an intent to discriminate on the basis of race by the defendants, and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001). Defendants argue that Eric Davis was the only plaintiff who attempted to enter a contract with the Clarion Hotel and as a result, Natasha and Naera Shumate have failed to allege and demonstrate facts supporting the third element of a Section 1981 claim – discrimination concerning one or more of the activities enumerated in the statute. (Def's. MTD Brf. at 6-8); (Def's. MSJ Brf. at 7-8).

**1. Plaintiffs' Agency Argument**

Natasha and Naera Shumate argue that they attempted to enter into a contract with the Clarion Hotel through Eric Davis, who they assert was acting as their agent for the purpose of obtaining a room at the hotel. The particular issue raised by the plaintiffs' agency argument is whether a principal – Natasha and Naera Shumate respectively – may bring a Section 1981 claim for a defendant's

10

discrimination against their agent.

The United States Supreme Court discussed the issue of agency and standing to bring a Section 1981 claim in <u>Domino's Pizza, Inc. v. McDonald</u>, 546 U.S. 470, 475 (2006). The substance of "McDonald's complaint was that Domino's had broken its contracts with JWM [– negotiated by McDonald, acting as JWM's agent –] because of racial animus toward McDonald, and that the breach had harmed McDonald personally[, as the sole shareholder in JWM.]" <u>Id.</u> at 473. McDonald argued by analogy that "[i]f Domino's refused to deal with the salesman for a pepperoni manufacturer because the salesman was black, that would violate the Section 1981 right of the salesman to make a contract on behalf of his principal." <u>Id.</u> The Court rejected this and found that McDonald could not state a claim under Section 1981. Id. The Court held that "[t]he right to 'make contracts' guaranteed by the statute was not the insignificant right to act as an agent for someone else's contracting – any more than it was the insignificant right to act as amanuensis in writing out the agreement[.]" <u>Id.</u> Clarifying its position that one who was simply an agent lacked standing to bring a section 1981 claim, the Court stated that "[w]hen the Civil Rights Act of 1866 was drafted, it was well known that '[i]n general a mere agent, who has no beneficial interest in a contract which he has made on behalf of his principal, cannot support an action thereon.'" <u>Id.</u> (internal citations omitted).

The mere existence of a parent-child relationship does not imply or automatically create any type of agency relationship between the two individuals,

11

Recreational Development Associates, Inc. v. Miller, 66 Pa. D. & C.2d 138, 140-41 (Pa. Com. Pl. 1974), minors have the power to form valid contracts under PA law. Aetna Cas. & Sur. Co. v. Duncan, 972 F.2d 523, 526 (3d Cir. 1992).

> Pennsylvania follows the general Restatement rule with respect to contracts of a minor. Contracts of a minor, other than contracts for necessities, are voidable by the minor, not void. This means that a minor can render a contract a nullity by disaffirming it at any point up until a reasonable time after the minor attains his or her majority. It does not mean a contract with a minor is a nullity prior to any such disaffirmance. Campbell v. Sears Roebuck & Co., 307 Pa. 365, 161 A. 310 (1932); Simmons v. Parkette National Gymnastic Training Center, 670 F.Supp. 140 (E.D. Pa.1987) (applying Restatement of Contracts 2nd §§ 7 and 4 in Pennsylvania diversity case); Capetola v. Orlando, 463 F.Supp. 498 (E.D. Pa.1978).

Duncan, 972 F.2d at 526

Individuals, minors included, have the "capacity to act as principal in a relationship of agency as defined in [Restatement (Third) of Agency] § 1.01 if, at the time the agent takes action, the individual would have capacity if acting in person." See Vine v. State Employees' Retirement Board, 956 A.2d 1088, 1096 (Pa. Commw. Ct. 2008) (quoting Restatement (Third) of Agency § 3.04 (2006). The appointment of an agent by a minor is not void, but merely voidable. Feagles v. Sullivan, 32 Pa. D. & C. 47, 53 (Pa. Com. Pl. 1938) ((cited in 33 PENNSYLVANIA LAW

ENCYCLOPEDIA, MINORS § 3 (2007) ("A minor's formal warrant of attorney is absolutely

void, and cannot be ratified.  This rule does not extend to the mere appointment of

an agent, which is voidable, not void.")); see Pankas v. Bell, 198 A.2d 312. 313 (Pa.

1964) ("[I]t is hornbook law that, generally, save as to necessaries, the contract of a

minor is voidable.").  A minor may enter, as the principal, into an agency agreement

with another, but "the actual agency agreement may be repudiated by the minor

without any liability" within a reasonable period after the minor comes of age, as

"may any contracts made for him by the agent."  Feagles, 32 Pa. D. & C. at 53.

Plaintiffs' complaint and supporting affidavits assert that Eric Davis was acting

both on his own behalf and also as an agent for Natasha and Naera Shumate.  See

(Amend Comp. at ¶ 27); (Davis Affidavit at ¶¶ 6-9); (Shumate Affidavit at ¶¶ 5-8).

The Domino's Pizza Court explained that "Section 1981 offers relief when racial

discrimination blocks the creation of a contractual relationship . . . [or] impairs an

existing contractual relationship, *so long as the plaintiff has or would have rights

under the existing or proposed contractual relationship*."  546 U.S. at 476 (emphasis

added).  If agency relationships existed and Davis was acting on behalf of Natasha

and Naera Shumate, then Natasha and Neara Shumate would have had rights under

the proposed contractual relationship with the Clarion Hotel and would, therefore,

have standing to assert a Section 1981 claim.

While plaintiffs' amended complaint contains sufficient facts to support a

reasonable inference that Davis was acting as an agent for Natasha and Naera

13

Shumate and thereby avoid dismissal under Rule 12(b)(6), the existence and scope of an agency relationship between Eric Davis and Natasha and or Naera Shumate remains a question of material fact for the jury. <u>Hahnemann Hosp. v. Golo Slipper Co.</u>, 5 A.2d 605, 607-08 (Pa. Super. Ct. 1939). In Pennsylvania, "the general rule may be stated that where the authority of an agent is to be implied from conduct of the parties, or established by witnesses, the fact and scope of the agency are for the jury." <u>Id.</u> This general rule applies where, as here, there is sufficient material "on the record, if believed, to establish the fact of agency and the authority of the agent." <u>Id.</u> at 608.

Defendants contend that

> [plaintiffs'] agency argument . . . could be relevant only if Mr. Davis sought to enter into contracts in the names of the other Plaintiffs (as their agent), but . . . there is no evidence that Mr. Davis sough to enter into three separate contracts for three separate rooms (perhaps one for each Plaintiff) or even three separate contracts for the rental of one room. Because there is no evidence that Natasha or Naera even attempted to enter into a contract, that attempt cannot possibly have been denied and there can have been no violation of Section 1981.

(Def's. MSJ Reply Brf. at 3); see also (Def's. MTD Reply Brf. at 2-3) (the word "assertion" is used where "evidence" appears in the preceding quotation).

Defendants assert the record provides no support for plaintiffs' argument that Davis was acting as an agent for Natasha and Naera Shumate and request dismissal or entry of summary judgement on Natasha and Naera Shumate's Section 1981 claims. (Def's. MSJ Reply Brf. at 3); (Def's. MTD Reply Brf. at 2-3). However, plaintiffs' amended complaint states that "[u]pon arrival Mr. Eric Davis went inside

the Clarion Hotel and inquired about room availability for himself, his fiancé, and his minor child." (Amend. Comp. at ¶ 27). In addition, plaintiffs provided affidavits supporting their contention that Davis was acting as an agent on behalf of Natasha and Naera Shumate. <u>See</u> (Davis Affidavit at ¶¶ 8-9); (Shumate Affadavit at ¶¶ 7-8). Specifically, Davis stated that "I at all times had full authority and directive from Natasha Shumate to contract for a room for overnight accommodation on behalf of her and our minor child, Naera Shumate" and that "I was sent into the Clarion Hotel by Natasha Shumate with the intent to contract for a room for [three] individuals including my fiancé Natasha Shumate, myself, and our minor daughter, Naera Shumate." (Davis Affidavit at ¶¶ 8-9). Natasha Shumate stated that "Eric Davis was at all times acting as my agent, with my full authority and directive to contract for a room for overnight accommodation on behalf of myself and our minor child, Naera Shumate" and that "Eric Davis was sent into the Clarion Hotel . . . with the express directive to contract for a room on my behalf and on behalf of our minor daughter, Naera Shumate." (Shumate Affidavit at ¶¶ 7-8).

Dismissal of Natasha and Naera Shumate's Section 1981 claims pursuant to FED. R. CIV. P. 12(b)(6) is not appropriate because the facts alleged in the complaint taken as true support the reasonable inference that (1) Plaintiff Davis was acting as an agent for Natasha and Naera Shumate and (2) Plaintiff Davis attempted to enter into a contract on their behalf with defendants. Summary judgment in favor of the defendants is not appropriate because a genuine issue of material fact exists

regarding the existence and scope of any agency relationship between Davis and Natasha and or Naera Shumate.

## 2. Natasha and Naera Shumate as Potential Intended Third-Party Beneficiaries

The facts alleged in the plaintiffs' complaint and set forth in the affidavits of Eric Davis and Natasha Shumate also support the inference that – even if Davis were not acting as agent for the other plaintiffs – Natasha and Naera Shumate would have been third-party beneficiaries to the proposed contract between Davis and the Clarion Hotel. <u>See</u> (Amend. Comp. at ¶ 27) ("Upon arrival, Mr. Eric Davis went inside the Clarion Hotel and inquired about room availability for himself, his fiancé, and his minor child."); (Shumate Affidavit at ¶ 6) ("Upon our first arrival at the Clarion Hotel . . . my fiancé, Eric Davis, went into the hotel to contract for a room for our family, consisting of himself, our minor child Naera, and myself[.]").

The United States Supreme Court has held that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" <u>Domino's Pizza</u>, 546 U.S. at 479-80 (quoting 42 U.S.C. § 1981), *quoted in* <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, No. Civ. A. 01-0480, 2006 WL 2460881, at *13 (M.D. Pa. Aug. 23, 2006). The Supreme Court made clear that Section 1981 "protects the would-be contractor along with those who already have made contracts." <u>Domino's Pizza</u>, 546 U.S. at 476. The Court went on to explain that

[a]ny claim brought under § 1981, therefore, must initially identify an impaired

16

"contractual relationship,"§ 1981(b), under which the plaintiff has rights . . . *We say "under which the plaintiff has rights" rather than "to which the plaintiff is a party" because we do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981 . . .* Neither do we mean to affirm that possibility.

Id. at 476, 476 n.3 (emphasis added).

The amendment to Section 1981 enacted by the Civil Rights Act of 1991 "'clearly prohibit[s] discriminatory conduct that occurs both before and after the establishment of the contractual relationship.'" Zubi v. AT&T, 219 F.3d 220, 221 (3d Cir. 2000) (quoting Perry v. Woodward, 199 F.3d 1126, 1132 (10th Cir. 1999)), *abrogated by* Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369, 374-75 (2004) (decision extending statute of limitation on certain Section 1981 claims). The 1991 amendment to Section 1981, "'creat[ed] liabilities that had no legal existence before the Act was passed.'" Zubi, 219 F.3d at 221 (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 313 (1994)). The language of the Domino's Pizza decision strongly suggests that the key question when determining standing to bring a Section 1981 claim is whether or not plaintiff had or would have had enforceable rights under the existing or proposed contract. 546 U.S. at 479-80.

Neither the United States Supreme Court nor the Court of Appeals for the Third Circuit have ruled definitively on whether a third-party beneficiary has sufficient contractual rights to assert a valid claim under Section 1981, a question which the Court's opinion in Domino's Pizza left open. See Mack v. AAA Mid-Atlantic, Inc., 511 F. Supp. 2d 539, 544 (E.D. Pa. 2007).

17

However, the Courts of Appeal for the Second, Fourth, Seventh and Tenth Circuits have held that third-party beneficiaries possess sufficient contractual rights to assert valid claims under Section 1981.  See Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 436 (4th Cir. 2006) (holding third-party beneficiary of contract with salon had standing under Section 1981); Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1118-19 (10th Cir. 2001) (holding plaintiff was not a third-party beneficiary of contract between another individual and department store and, therefore, could not assert claim under Section 1981); Jones v. Local 520, Intern. Union of Operating Eng'rs, 603 F.2d 664, 665-66 (7th Cir. 1979) (holding plaintiffs could bring Section 1981 for racial discrimination regarding consent decree between union and employer to which plaintiffs were third party beneficiaries); Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333, 1339 (2d Cir. 1974) (holding African-American plaintiffs could bring Section 1981 claim as third-party beneficiaries to contract between swim club and white members when plaintiffs were refused entry as guests).

In Denny, Seandria Denny, an African-American woman, bought a gift package from a salon and spa which included a manicure, facial, lunch, and a hair cut for her mother, Jean Denny, who was also African-American.  Denny, 456 F.3d at 429-30.  The Court of Appeals for the Fourth Circuit found that *both* Seandria and Jean Denny had standing to bring claims under Section 1981.  Id. at 435-36.

To prove a § 1981 claim . . .a plaintiff must ultimately establish both that the

18

defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest. <u>See</u>, <u>e.g.</u>, <u>Williams v. Staples, Inc.</u>, 372 F.3d 662, 667 (4th Cir. 2004); <u>Morris v. Dillard Dep't Stores, Inc.</u>, 277 F.3d 743, 751-52 (5th Cir. 2001); <u>Morris v. Office Max, Inc.</u>, 89 F.3d 411, 413-15 (7th Cir. 1996).

<u>Id.</u> at 434.

Seandria Denny's contractual interest supporting her Section 1981 claim was based on her status as a party to the contract, but Jean Denny's contractual interest was based on her status as a third-party beneficiary to the contract. <u>Id.</u> at 436 ("[T]his was a third-party beneficiary contract.").  The Court of Appeals rejected the argument that Jean Denny could not bring a Section 1981 claim as a third-party beneficiary and reversed the district court's grant of summary judgment on those grounds. <u>Id.</u> at 431.

While the circuit court decisions permitting Section 1981 claims by third-party beneficiaries involved cases where a contract between the parties had been finalized, third-party beneficiaries have sustained Section 1981 claims where the contract in which they would have third-party interests was proposed and not complete or executed. <u>See</u> <u>Macedonia Church v. Lancaster Hotels Ltd.</u>, 560 F. Supp. 2d 175, 185-86 (D. Conn. 2008) ("[T]he individual plaintiffs were intended beneficiaries, not merely incidental beneficiaries, of the proposed contract between Macedonia Church and the Lancaster Host, and as third-beneficiaries of that contract, they have a right to sue upon it under § 1981."); <u>Miales v. McDonald's Rest. of Colo., Inc.</u>, 438 F. Supp. 2d 1297, 1300 (D. Colo. 2006) ("Ms. Miales clearly

19

intended to buy food for her children. Accordingly, summary judgment is inappropriate on the children's § 1981 claims because they were third-party beneficiaries.").

Although <u>Domino's Pizza</u> did not present this precise issue, permitting third-party beneficiaries of proposed contracts to bring claims under Section 1981 is consistent with the Supreme Court's language and reasoning in <u>Domino's Pizza</u> and with the text of Section 1981. The Court stated that a plaintiff may bring a claim under Section 1981 where "he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" <u>Domino's Pizza</u>, 546 U.S. at 479-80 (quoting 42 U.S.C. § 1981). The phrase "to make and enforce" means "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Given (1) that a plaintiff can assert a valid Section 1981 claim where "he has (or would have)" rights under an "existing (or proposed)" contract, <u>Domino's Pizza</u>, 546 U.S. at 479-80, and (2) that third-party beneficiaries may have rights under an existing or proposed contract and the applicable law of contracts, this court finds that a third-party beneficiary may state a valid claim under Section 1981.

If a third-party beneficiary may state a valid claim under Section 1981, the federal courts look to the common law of the forum state to determine whether a contract was made or proposed under which the plaintiff would have rights as a third-party beneficiary. <u>See</u> <u>Mack</u>, 511 F. Supp. 2d at 545 n.2.

20

The Pennsylvania Supreme Court has adopted the Restatement (Second) of

Contracts § 302 which allows for third-party intended beneficiaries to sue for breach

of contract "even though the actual parties to the contract did not express an intent

to benefit the third party." <u>Sovereign Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d

162, 168 (3d Cir. 2008). Section 302 of the Restatement (Second) provides that

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

<u>Id.</u> (quoting Restatement (Second) of Contracts § 302 (1981)).

> Under this approach, a two-part test must be satisfied:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

<u>Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.</u>, 39 F. Supp. 2d 517, 535 (M.D. Pa. 1999) ((citing <u>Scarpitti v. Weborg</u>, 609 A.2d 147, 150 (Pa. 1992) (quoting <u>Guy v. Liederbach</u>, 459 A.2d 744, 751 (Pa. 1983)).

The first element of the test establishes "a standing requirement which leaves

discretion with the court to determine whether recognition of third party beneficiary

status would be appropriate,"and the second element "defines the two types of

claimants who may be intended as third party beneficiaries." <u>Scarpitti</u>, 609 A.2d at

21

150 (quoting <u>Guy</u>, 459 A.2d at 751). The first question establishes whether an individual is a third-party beneficiary and is a question of law for the court's determination. <u>Williams Controls</u>, 39 F. Supp. 2d at 535. The second question differentiates between intended third-party beneficiaries, who have rights under section 302, and incidental third-party beneficiaries, who do not have rights under section 302. <u>Id.</u>

In <u>Mack</u>, the United States District Court for the Eastern District of Pennsylvania assumed *arguendo* that third-party beneficiaries could bring claims under Section 1981. 511 F. Supp. 2d at 544-45. The court then proceeded to dismiss the plaintiff's claim because he – as a passenger in another individual's car – was not a third-party beneficiary under Pennsylvania law to the contract between that individual and Defendant AAA for automobile assistance services. <u>Id.</u> at 544-45. Because the <u>Mack</u> court was able to rule as a matter of law that the plaintiff was not a third-party beneficiary, it was not ultimately required to determine whether he would have been able to assert a Section 1981 claim.

An examination of Pennsylvania contract law reveals that plaintiffs' amended complaint alleges facts sufficient to support the reasonable inference that Natasha and Naera Shumate were third-party beneficiaries of the proposed contract. However, given defendants' contention that Davis sought to rent a room solely for himself, a genuine issue of material fact remains regarding whether Natasha and Naera were intended third-party beneficiaries and therefore had sufficient rights

22

under the contract to sustain a Section 1981 claim. Natasha and Naera Shumate have plead facts sufficient to survive a motion to dismiss per FED. R. CIV. P. 12(b)(6) and because a genuine issue of material fact remains regarding their status as intended third party beneficiaries, summary judgment in favor of defendants will be denied.

The instant case does not involve a completed contract, but rather an effort by plaintiffs to enter a contract with defendants for a hotel room. Plaintiffs allege the proposed contract for a hotel room was frustrated by defendants' racial discrimination. When an adult enters a hotel and seeks to rent a room for himself, his fiancé, and their minor daughter and the hotel assents to the rental, it can reasonably be concluded that the adult renter and the hotel intend for the fiancé and daughter to enjoy the benefits of the contract for rental accommodations even if that adult and the hotel are the sole parties to the contract. This court finds that the recognition of Natasha and Naera Shumate as third-party beneficiaries is appropriate to effectuate the intentions of the parties under the proposed contract.

The question thus becomes whether Natasha and Naera Shumate were intended – rather than merely incidental –  third-party beneficiaries. See Williams Controls, 39 F. Supp. 2d at 535. The court must examine whether the circumstances indicate that the Clarion Hotel would have intended to confer benefits on Natasha and Naera Shumate under the proposed contract. Assuming *arguendo* that defendants would deny any intention to confer third-party benefits on Natasha

23

and Naera Shumate under the proposed contract with Eric Davis, the court finds that the circumstances indicate otherwise. Simply, where an individual seeks to enter a contract to rent a hotel room for the expressed purpose of accommodating himself, his fiancé, and their minor child, the circumstances indicate that the hotel would intend to confer third-party benefits on the fiancé and minor child. Whether the Clarion Hotel intended confer benefits on Natasha and Naera Shumate under the proposed contract is a disputed matter of material fact. As such, summary judgment in favor of the defendants is not appropriate.

**B. Natasha and Naera Shumate's Claims Asserted Under 42 U.S.C. § 2000a**

Plaintiffs' amended complaint argues that defendants refusal to rent a room at the Clarion Hotel to the plaintiffs because of plaintiffs' race violated their rights under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. (Amend. Comp. at ¶¶ 60-62). Defendants contend neither Natasha nor Naera Shumate attempted to rent a room at the Clarion Hotel and therefore could not have been denied full and equal enjoyment of public accommodations or treated less favorably than members outside their protected class who attempted to rent a room. (Def's. MTD Brf. at 10-11); (Def's. MSJ Brf. at 9-10). On these grounds, the defendants moved for dismissal and summary judgment on the Section 2000a claims asserted by Natasha and Naera Shumate.

Section 2000a states that

[a]ll persons shall be entitled to the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a.

Similarly to claims asserted under Section 1981, to state a valid claim under Section 2000a a plaintiff must assert and show

that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class.

McCoy v. Homestead Studio Suites Hotels, 390 F. Supp. 2d 577, 584-85 (S.D. Tex. 2005).

In slightly different terms, tailored specifically to Section 2000a claims for refusals to contract for public accommodations based on race,

a plaintiff must demonstrate that the plaintiff (1) is a member of a protected class, (2) attempted to contract for services and afford herself the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside her protected class who received full benefits or were treated better.

Slocumb v. Waffle House, Inc., 565 F. Supp. 2d 1332, 1342 (N.D. Ga. 2005).

The inquiry for claims under Section 2000a claim are substantially similar to the inquiry for claim under Section 1981. Id. Reflecting that similarity, the defendants' argument supporting dismissal of or summary judgment on Natasha and Naera Shumate's Section 2000a claims is essentially the same as defendants' arguments regarding Natasha and Naera Shumate's claims under Section 1981. Compare (Def's. MTD Brf. at 10-11), and (Def's. MSJ Brf. at 9-10), with (Def's. MTD Brf. at 7-9), and (Def's. MSJ Brf. at 6-8). Defendants' reply briefs also highlight this

parallel. (Def's. MTD Reply Brf. at 2-4); (Def's. MSJ Reply Brf. at 2-3). Defendants argue that

> [b]ecause there is no assertion that Natasha or Naera even attempted to enter into a contract, that attempt cannot possibly have been denied and there can have been no violation of Section 1981. Similarly, because no facts are alleged to support an assertion that Natasha and Naera attempted to exercise the right to "full benefits and enjoyment of a place of public accommodations,"

Natasha and Naera Shumate either failed to state claims under Section 2000a, or if they did state a claim under Section 2000a, summary judgment for the defendants is appropriate. (Def's. MTD Reply Brf. at 3) (quoting 42 U.S.C. 2000a); (Def's. MSJ Reply Brf. at 3) (quoting 42 U.S.C. 2000a).

The court will address each element of these claims in turn.

First, plaintiffs must allege and show that they are members of a protected class. Slocumb, 565 F. Supp. 2d at 1342. Plaintiffs' complaint and supporting affidavits state that Eric Davis, Natasha Shumate and Naera Shumate are African-American. (Amend. Comp. at ¶ 24); (Davis Affidavit at ¶ 2); (Shumate Affidavit at ¶ 2). Defendants concede that Natasha and Naera Shumate are members of a protected class. (Def. MSJ Statement of Facts (Doc. 26)(hereinafter "Def. MSJ SOF").

Next, plaintiffs must allege and show that they "attempted to contract for services and afford herself the full benefits and enjoyment of a public accommodation." Slocumb, 565 F. Supp. 2d at 1342. As discussed with regard to Natasha and Naera Shumate's claims under Section 1981, plaintiffs pled facts

sufficient to survive a Rule 12(b)(6) motion to dismiss.  Genuine issues of material

fact exist regarding (1) the existence and scope of the agency relationship between

Natasha and Naera Shumate and Eric Davis and (2) whether Natasha and Naera

Shumate were intended third-party beneficiaries of Eric Davis's proposed contract to

rent a room at the Clarion Hotel.

To establish the remaining elements, plaintiffs must allege and show that they

were, thirdly, "denied the full benefits or enjoyment of a public accommodation," and

fourthly, that "such services were available to similarly situated persons outside her

protected class who received full benefits or were treated better."  <u>Slocumb</u>, 565 F.

Supp. 2d at 1342.  Citing plaintiffs' complaint in their statement of facts supporting

summary judgment, defendants state that

> [w]hen Defendant Pierce appeared from a back room, Mr. Davis asked her
> "Why did you tell me there was no room?" to which Ms. Pierce replied, "There
> was a cancellation."  Mr. Davis replied, "You had [fifty-two] cancellations?" to
> which Ms. Pierce replied, "I don't have to explain anything to you," and asked
> [Mr. Davis] to leave the hotel.  Mr. Davis asked Ms. Pierce if she had told him
> there were no rooms available because he was black and she replied, "yes."

(Def. MSJ SOF at 3 ¶ 10); <u>see also</u> (Amend. Comp. at ¶ 35).

In addition to the defendants' acknowledgment that rooms were available

despite Pierce's representation to the contrary, plaintiffs' complaint and affidavits

allege that while Davis was speaking with Pierce and Dinardo and after Natasha and

Naera Shumate entered the hotel, three white males entered the hotel, asked to rent

a room, and were provided with that opportunity without hesitation. (Amend. Comp.

at ¶¶ 32-34); <u>see</u> <u>also</u> (Shumate Affidavit at ¶ 14); (Davis Affidavit at ¶ 16).  This

27

court finds that plaintiffs complaint alleged facts sufficient to establish the third and fourth elements of a Section 2000a claim. Plaintiffs allege that they were denied the benefits of a contract for lodging while these white men received such benefits. The defendants deny those claims. An issue of fact remains as to the truth of those assertions. Defendants' motions will therefore be denied on this point.

**C. Plaintiffs' Claims for Intentional Infliction of Emotional Distress**

Plaintiffs assert claims of IIED against the defendants. (Amend. Comp. at 11). Defendants Twin Tier, Scranton Hospitality, and Lisa Pierce filed a motion to dismiss (Doc. 15) and Defendant Choice Hotels filed a motion for summary judgment (Doc. 24) for plaintiffs' IIED claims. Although asserted under the respective procedural rules and standards of decision for each motion, defendants' arguments in support of the motion to dismiss and the motion for summary judgment before the court are the same.

Defendants argue, alternatively, that (1) plaintiffs' IIED claims are preempted because plaintiffs have asserted statutory discrimination claims arising from the same factual circumstances, (2) that their conduct did not rise to the level of extremity and outrageousness required to state or sustain a claim of IIED, and finally (3) even if their conduct was extreme and outrageous, Natasha and Naera Shumate did not actually experience the defendant's conduct and therefore cannot state or sustain a claim for IIED. See (Def's. MTD Brf. at 13-17); (Def's. MSJ Brf. at 12-16).

First, defendants argue that the plaintiffs' cannot sustain their IIED claims

28

because the "allegations which [the plaintiffs] contend support [their IIED claims] are the same allegations which they contend support their discrimination claims under [Section 1981] and Title II of the Civil Rights Act" and, therefore, the state common law claim of IIED is preempted.  (Def's. MTD Brf. at 13); (Def's. MSJ Brf. at 12).

The question of statutory preemption of common law tort claims where claims of discrimination were asserted under a state statute was addressed in Keck v. Commercial Union Insurance Co., 758 F. Supp 1034, 1038-39 (M.D. Pa. 1991), on which both parties rely in their briefs.  See (Def's. MTD Brf. at 13); (Plaintiff's Brief Opposing Motion to Dismiss (Doc. 21)(hereinafter "Ptf. MTD Opp. Brf.") at 15). In considering whether a claim for intentional infliction of emotional distress was preempted by a concurrent claim of racial discrimination asserted under the Pennsylvania Human Resources Act (PHRA), the court stated that

> if a common law tort claim and a discrimination claim are brought in the same lawsuit, the common law claim will not be preempted by the PHRA if it is factually independent of the discrimination claim. Thus, if an employer effected all the elements of intentional infliction of emotional distress upon an employee, and chose to do so because the employee was black, the employer may be found liable for discrimination as well as intentional infliction of emotional distress.
>
> [I]f all or part of the facts that would give rise to a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework. If, however, the act that would support the common law claim is only an act of discrimination, the claim is preempted by and must be adjudicated within the framework of the PHRA.

Keck, 758 F. Supp at1038-39.

Although it appears in the present case that an act of discrimination is the conduct giving rise to plaintiffs' IIED claims, preemption is not automatic and the analysis does not stop there. To determine the preemptive affect of the claims asserted under the PHRA, the <u>Keck</u> court looked to the language of the act – particularly its preemption provision. <u>See</u> <u>Id.</u> at 1038.

The PHRA provides that "[a]ny person claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission a verified complaint" under the statute. 43 P.S. § 959. The PHRA prohibits "any person being the owner . . . manager . . . agent or employee of any public accommodation . . . [from] refus[ing], withhold[ing] from, or deny[ing] to any person because of his race . . . either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation." 43 P.S. § 955(I)(1). The PHRA preemption provision states that,

> as to acts declared unlawful by [43 P.S. § 955] of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein.

43 P.S. § 962(b).

Plaintiffs did not invoke the procedures and remedies provided by the PHRA. Had they asserted statutory claims under the PHRA based on the same discriminatory conduct that gave rise to their IIED claims, those IIED claims may well have been preempted. However, under the PHRA and <u>Keck</u>, it is the filing of

30

concurrent common law and PHRA statutory claims based on the same discriminatory conduct that can result in the preemption of the common law claims. Plaintiffs filed no such concurrent claims under the PHRA. As such, their IIED claims are not preempted.

For example, in Schweitzer v. Rockwell Int'l, 586 A.2d 383 (Pa. Super. Ct. 1990), plaintiff's IIED claim arising out of an incident involving molestation by her supervisor was factually independent from her employment discrimination claim under PHRA, which arose from retaliation by her employer when she reported the molestation. Schweitzer, 586 A.2d at 388-89. The IIED claim was based on the molestation and not on employment discrimination and was therefore not preempted. Id. Had the plaintiff claimed IIED based on the employer's discriminatory conduct, the IIED claim would likely have been within the PHRA's preemption provision. See Id.

Here, rather than assert a statutory discrimination claim under the PHRA, plaintiffs assert statutory claims under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a. (Amend. Comp. at 10-11). Neither Section 1981 nor Title II of the Civil Rights Act, 42 U.S.C. § 2000a contain preemption provisions barring common law claims arising from the same factual circumstances and conduct as the statutory claim. Section 2000a provides that

> the remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter, but *nothing in this subchapter shall preclude any individual . . . from asserting any right based on any other*

31

*Federal or State law not inconsistent with this subchapter* . . . or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right.

42 U.S.C. § 2000a-6 (emphasis added).

Furthermore, the language of Title IX of the Civil Rights Act addresses both of the plaintiff's statutory claims.  (Amend. Comp. at 12-13).

Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, *nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.*

42 U.S.C. § 2000h-4 (emphasis added).

<u>Keck</u>, the case cited by both parties, involved a state statute – the PHRA – which contained a preemption provision that precluded the plaintiff's IIED claim filed concurrently with her claim under the PHRA.  758 F. Supp at 1038-39.  In the present case, the federal statute – the Civil Rights Act – under which the plaintiffs assert their claims does not contain a provision preempting their IIED claims.  See 42 U.S.C. § 2000h-4.  In the absence of authority mandating that the plaintiffs bring their IIED claims within a statutory framework when those claims arise from racially discriminatory conduct in the provision of public accommodation, the defendants' motion to dismiss based on statutory preemption will be denied.  Defendants not being entitled to a favorable judgement as a matter of law on the question of statutory preemption, summary judgment based on statutory preemption will be denied.

Second, defendants contend that, as a matter of law, their alleged conduct was not "extreme and outrageous."  (Def's. MTD Brf. at 15); (Def's. MSJ Brf. at 14). Defendants maintain that plaintiffs IIED claims are based on the refusal to rent a hotel room to Eric Davis on account of his race and assert that the "[p]laintiffs have alleged no additional facts in the Complaint which possibly be found to constitute 'extreme and outrageous conduct.'" (Def's. MTD Brf. at 15); (Def's. MSJ Brf. at 15).

Although the Supreme Court of Pennsylvania has not expressly recognized the tort of IIED and its definition in the Restatement (Second) of Torts § 46 (1965), it has recognized the requirements of Section 46 as establishing the minimum requirements of the tort.  See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000)).  Section 46 provides that

> [o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Id.

To state and sustain a claim for IIED, plaintiff must allege and show that defendants' conduct was (1) extreme and outrageous (2) intentional or reckless, and (3) caused severe emotional distress.  Livingston v. Borough of Edgewood, No. Civ. A. 08-812, 2008 WL 5101478 at *6 (W.D. Pa. 2008) (citing Hargraves v. City of Philadelphia, 2007 WL 1276937 (E.D.Pa. April 26, 2007)

Pennsylvania courts have defined "extreme and outrageous conduct" as conduct "so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (citing Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Liability for IIED is "reserved by the courts for only the most clearly desperate and ultra extreme conduct." Id. The challenged conduct is sufficiently extreme and outrageous when "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Kazatsky v. King David Mem'l Park, 527 A.2d 988, 994 (Pa.1987)).

Although defendants rely on EEOC v. Chestnut Hill Hosp., 874 F. Supp 92, 96 (E.D. Pa. 1995), to support their statutory preemption argument, (Def's. MTD Brf. at 13-14); (Def's. MSJ Brf. at 13), Chestnut Hill Hosp. is more appropriately directed toward the question of whether the defendants' conduct was extreme and outrageous.

In Chestnut Hill Hosp., the court found that the hospital's allegedly discriminatory hiring practices were not sufficiently extreme or outrageous as a matter of law and plaintiffs' IIED claim failed as a result. 874 F. Supp at 96. In particular, the court noted that

> it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988). . . As this court has noted, "[r]acial discrimination alone . . . does not state a claim for intentional infliction of emotional distress." Nichols v. Acme Markets, Inc., 712 F.Supp 488 (E.D. Pa.1989), aff'd, 902 F.2d 1561 (3d Cir.1990).

34

Chestnut Hill Hosp., 874 F. Supp at 96.

The case law relied upon by defendants to argue that racial discrimination cannot be "extreme and outrageous" as a matter of law is factually distinguishable from the present case. Moreover, the case law arguably does not go as far as to support the categorical proposition that racial discrimination may never constitute extreme and outrageous behavior for the purposes of an IIED claim. Hargrave v. City of Phila., No. Civ. A. 05-4759, 2007 WL 1276937 at *3 (E.D. Pa. Apr. 26, 2007), collects a number of cases, including Chestnut Hill Hospital, to support the conclusion that if the plaintiff's cryptic and confusing filings asserted a claim of IIED, that claim should be dismissed because racial discrimination is not extreme and outrageous as a matter of law. Although the court in Hargrave states that "Courts in [the Eastern District of Pennsylvania] have found that racial discrimination alone does not meet the 'extreme and outrageous conduct' standard necessary to state a claim for [IIED]," the question of what additional factors or circumstances could be combined with racial discrimination to support a valid claim for IIED is not addressed. Id. (citing Harry v. City of Phila., No. Civ. A. 03-661, 2004 WL 1387319 at *15 (E.D. Pa. June 18, 2004).

While it would be incorrect to assert that racial discrimination is per se extreme and outrageous, it is equally incorrect to suggest that racial discrimination cannot constitute extreme and outrageous behavior for the purposes of an IIED claim. Cases where racial discrimination did not amount to extreme and outrageous

35

conduct was less overt and flagrant than the alleged discrimination in the instant case.  See, e.g., Garcia v. Matthews, No. Civ. A. 01-1514, Memorandum, Doc. 28 at 9-10 (M.D. Pa. Feb. 4, 2002) *aff'd on other grounds*, 66 Fed. Appx. 339 (3d Cir. 2003) (allegedly discriminatory deprivation of procedural safeguards prior to termination of employment was not extreme and outrageous as a matter of law); Farrell v. Ashcombe Dover Homeowner's Ass'n, No. Civ. A. 07-2324, 2009 WL 811714, at*7 (M.D. Pa. Mar. 26, 2009) (allegedly discriminatory enforcement of homeowner's association policies was not extreme and outrageous as a matter of law); Harry v. City of Phila., No. Civ. A. 03-661, 2004 WL 1387319, 14-15 (E.D. Pa. June 18, 2004) (allegedly discriminatory evaluation, promotion and hiring practices were not extreme and outrageous as a matter of law); Barbosa v. Tribune Co., No. Civ. A. 01-1262, 2003 WL 22238984, at *6 (E.D. Pa. Sept. 25, 2003) ("broad and non-specific allegations of harassment [in the form of racial slurs by co-workers] and discrimination [in training, evaluation and promotion decisions by supervisors] do not meet the standard" for extreme and outrageous conduct).  While these cases represent instances where IIED claims arising out of alleged racial discrimination did not survive motions for dismissal or summary judgment, they do not involve the type of overt discrimination alleged by the plaintiff in this case.  In none of those cases did an employee's supervisor state directly and in the presence of others that the

employee was denied a promotion or was being fired because he was black.[1]

It is true that the "'extreme and outrageous'standard is not easily satisfied" and "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" do not constitute the type of conduct necessary to sustain a claim of IIED. Bowersox v. P.H. Gladfelter Co., 677 F. Supp. 307, 310 (M.D. Pa. 1988) (quoting Restatement (Second) of Torts § 46, cmt. d). However, Section 46 of the Restatement (Second), which establishes the minimum requirements for extreme and outrageous conduct per Taylor, states in part:

> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

---

[1] Plaintiffs' amended complaint and the affidavits from Eric Davis and Natasha Shumate allege that not only did Lisa Pierce refuse to rent a room to the family, but that Pierce openly admitted to lying about availability and sent Davis to another hotel because of the color of his skin. Pierce also told Davis she did not have to explain herself to him and ordered him to leave the hotel. This confrontation took place in the presence of Natasha and Naera Shumate and others in the hotel lobby. Moreover, while this altercation was occurring, three white men entered the hotel, asked for a room and received one without hesitation from the staff. Not only were plaintiffs openly denied a room because of their race, they witnessed firsthand the hotel grant the privileges they were denied to three non-minority patrons. A reasonable jury could certainly find that openly admitting to racial discrimination in a such a public manner while openly providing the same services to white patrons is extreme and outrageous.

Restatement (Second) of Torts § 46, cmt. d.

This court cannot conclude that the challenged conduct – most notably Pierce's comments upon the plaintiffs' return to the Clarion Hotel – were "mere insults . . . annoyances . . .petty oppressions . . . [or] trivialities." <u>See</u> <u>Id.</u> Plaintiffs' amended complaint asserts that Pierce told Davis there were no rooms available at the Clarion Hotel and sent the plaintiffs to another hotel to seek accommodations. (Amend. Comp. at ¶¶ 24-29). When Davis inquired with the Comfort Suites about rooms, he was told none were available, but was directed to try the Clarion Hotel by the clerk who claimed to know that the Clarion Hotel had rooms available. (<u>Id.</u> at ¶ 29). After the clerk at the Comfort Suites confirmed that there were fifty-two rooms available at the Clarion Hotel, the plaintiffs returned to there to seek accommodations a second time. (<u>Id.</u> at ¶ 31). Davis reentered the Clarion Hotel and spoke to a different clerk, Dinardo. (<u>Id.</u> at ¶ 32). He asked Dinardo for the clerk who was working earlier – Pierce –  and was told she was no longer there. (<u>Id.</u>). Dinardo confirmed there were rooms available. (<u>Id.</u>). While Davis and Dinardo were speaking, Pierce – who was in fact still at the hotel – "appeared from a back room." (<u>Id.</u> at ¶ 32-33). "At this same time, [Natasha] Shumate and the couple's young daughter, Naera [Shumate] entered the Clarion Hotel[.]" (<u>Id.</u> at ¶ 33). The complaint goes on to assert that

> [u]pon seeing Defendant Lisa Pierce appear, Mr. Davis stated, he had just called and was back to obtain a hotel room. Mr. Davis stated to Lisa Pierce, "Why did you tell me there was no room?", to which Lisa Pierce replied, "I

38

don't have to explain anything to you.  Get out of my hotel."  Mr. Davis then asked, "Did you say there were suddenly no rooms available because I was black?" , to which Lisa Pierce replied, "Yes".
(Id. at ¶ 35).

The conduct alleged here was intentional, wanton, and assertedly discriminatory.  Such conduct could easily cause a reasonable member of our society to exclaim, "Outrageous!," upon hearing of it.  Regarding defendants' motion to dismiss, the facts included in the plaintiffs' amended complaint and discussed above, taken as true and with all fair and reasonable inferences drawn in favor of the plaintiff, state a valid claim of IIED for which relief may be granted.  Therefore, the defendants' motion to dismiss on the grounds that defendants' conduct was not extreme and outrageous will be denied.

Defendants also moved for summary judgment on the grounds that "[t]here are no additional facts of record or allegations in the Complaint which could possibly found to constitute 'extreme or outrageous conduct'" and therefore, they are entitled to judgment in their favor as a matter of law and summary judgment should be granted.  (Def's. MSJ Brf. at 15).  In addition to the facts plead in the amended complaint and discussed above, Eric Davis and Natasha Shumate attached affidavits to their answer to the defendant's brief statement of material facts supporting their motion for summary judgment. (Answer to Statement of Facts (Doc. 26) at 2).  The affidavits substantially recount the facts included in the amended complaint and provide clarification of some ambiguity the complaint contains.  See

39

(Davis Affidavit ¶¶ 17-18); (Shumate Affidavit ¶¶ 13-19). Davis specifically states that the entire exchange between he and Pierce upon the plaintiffs' return to the Clarion Hotel was "witnessed, heard and experienced" by both Natasha and Naera Shumate. (Davis Affadavit at ¶¶ 17-18). Natasha Shumate substantially corroborates those assertions in her affidavit. (Shumate Affidavit at ¶¶ 13-19). Specifically, she asserts that she and Naera were with Davis from the time that Dinardo confirmed that rooms were available at the Clarion Hotel. (Shumate Affadavit at ¶ 13). Furthermore, she and Naera witnessed the white individuals enter, ask for, and receive a room without any hesitation by the Clarion staff, as well as the entire altercation between Davis and Pierce during which Pierce ordered Davis out to leave the hotel and acknowledged that she refused him a room because of his race. (Id. at ¶¶ 13-19).

Although the "'courts may have no particular wisdom with respect to what is socially intolerable[,]' . . . '[i]t is the duty of the court to determine, in the first instance, whether the defendants' conduct could reasonably be regarded as so extreme and outrageous as to permit recovery'" for IIED. Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307, 311 (M.D. Pa. 1988) (internal citations omitted). Defendants have not demonstrated that a reasonable jury could not find their conduct extreme and outrageous. Moreover, the body of case law cited by the defendants is factually distinguishable from the present case and does not support the categorical proposition that racial discrimination is not extreme and outrageous conduct under

any factual circumstances and therefore not extreme and outrageous as a matter of law. As such, the defendants' motion for summary judgment will be denied on this point.

Third, defendants also argue that even if plaintiffs' IIED claims are not statutorily excluded and defendants' conduct is extreme and outrageous, "Natasha and Naera Shumate cannot maintain such a claim because there is no evidence that Natasha or Naera experienced any such conduct by any Defendant." (Def's. MTD Brf. at 16). Plaintiff's amended complaint states that Natasha and Naera Shumate entered the Clarion Hotel while Davis was speaking with Dinardo and witnessed Davis' confrontation with Pierce. (Amend. Comp. at ¶¶ 32-35)("At this same time, Plaintiff [Natasha] Shumate and the couple's minor daughter, Naera, entered the Clarion Hotel[.]"). Furthermore, ¶ 37 of the amended complaint lists the "discriminatory treatment" that the "plaintiffs" - plural - were subjected to by the defendants. (Id. at ¶ 37). Taking the facts included in the complaint as true, it can be inferred that Plaintiffs Natasha and Naera were present for and did in fact experience the challenged conduct by the defendants. As such, defendants' motion to dismiss will be denied on this point.

Defendants restate this argument in support of their motion for summary judgment and assert that "the Complaint alleges only that Natasha and Naera at some point 'entered' the hotel, but there is no averment or evidence that either Natasha or Naera saw, heard, or experienced any conduct by the defendants, much

less any 'extreme' or 'outrageous' conduct." (Def's. MSJ Brf. at 15-16). Defendants' statement of material facts filed with their motion for summary judgment states the race of both Natasha and Naera Shumate and states expressly that both remained in the car while Plaintiff Davis entered the Clarion Hotel for the first time. (Def. MSJ SOF at ¶¶ 2-3, 6). However, defendants' statement of material facts makes no mention of either Natasha or Naera's location upon their return to the Clarion Hotel when the second interaction with Defendant Pierce occurred. (Def. MSJ SOF at ¶ 9-10)("Plaintiffs returned to the Clarion Hotel. Mr. Davis entered the hotel[.]"). Defendants' brief in support of summary judgment correctly acknowledges that plaintiffs' amended complaint alleges that Natasha and Naera Shumate entered the Clarion Hotel while Davis was speaking with Dinardo and before the second interaction with Pierce. (Amend. Comp. at ¶¶ 32-35). Furthermore, both Natasha Shumate and Eric Davis provided affidavits in opposition to defendant's motion for summary judgment which state specifically that Natasha and Naera Shumate were inside the hotel and did see and experience the hotel staff rent a room to several white individuals without hesitation as well as the verbal confrontation between Davis and Pierce. (Davis Affidavit at ¶¶ 16-17); (Shumate Affidavit at ¶¶ 12-15). Examining the facts in the light most favorable to the plaintiffs, this court concludes that a reasonable jury could find that Plaintiffs Natasha and Naera Shumate were present for and did experience conduct by the defendants. Given this dispute over a genuine issue of material fact, summary judgement will be denied on this point.

Finally, defendants assert that "as a minor, Naera [Shumate] may have been so young as to make it impossible for her to have understood any conduct, even if she had witnessed it. The complaint contains no averments to the contrary." (Def's. MTD Brf. at 16). The defendants offer no support for the implied proposition that the plaintiffs were required specifically include in their pleadings either Naera Shumate's age or an assertion that, although a minor, she is capable of comprehending the defendants' challenged conduct. Plaintiffs' complaint is sufficient to create a reasonable expectation that discovery will reveal evidence of Naera Shumates experience with defendants and her level of comprehension of any such experience. As such, defendants' motion to dismiss will be denied on this point.

Defendants recycle this argument to support summary judgment, stating "there is no evidence that, as a minor, Naera was mature enough to have understood any conduct, even if she had witnessed it." (Def's. MSJ Brf. at 16). Although none of filings related to the motions for dismissal or summary judgment reveal Naera Shumate's actual age, whether she was capable of comprehending conduct by any defendant that she may have witnessed is a question of fact. Defendants assert "there is no evidence . . . Naera was mature enough" to understand any conduct she might have witnessed. (Id.). The defendants have offered nothing more than this assertion to demonstrate that Naera Shumate was not sufficiently mature to comprehend any such conduct. Furthermore, the affidavit filed by the Plaintiff Davis supports the assertion that Naera was mature enough to and

did in fact comprehend the conduct she allegedly witnessed. (Davis Affidavit at ¶ 21) (My daughter, Naera Shumate, was visibly upset and shaken by the incident and events unfolding around her because of the actions and behavior of Clarion Hotel employee Lisa Pierce"). Because a genuine issue of fact remains as to whether Naera Shumate was mature enough to comprehend or be affected by the defendants' alleged conduct, summary judgment will be denied on this point.

## V. CONCLUSION

For the reasons discussed above, defendants' motion to dismiss (Doc. 15) and  motion for summary judgment (Doc. 24) will be denied.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATASHA S. SHUMATE, NAERA
"NONNI" SHUMATE, a minor, and    :    No. 3:08cv1316
ERIC DAVIS,      :
        Plaintiffs     :
        :    (Judge Munley)
      v.      :
        :
TWIN TIER HOSPITALITY, LLC    :
individually and t/a/d/b/a, CLARION  :
HOTEL; SCRANTON HOSPITALITY,  :
LLC, individually and t/a/d/b/a    :
CLARION HOTEL; CHOICE HOTELS  :
INTERNATIONAL, INC.; and LISA   :
PIERCE,      :
        Defendants    :

### ORDER

**AND NOW**, to wit, this 13th day of August 2009, the motion to dismiss (Doc. 15) filed by Defendants Twin Tier Hospitality, LLC, Scranton Hospitality, LLC, and Lisa Pierce, and the motion for summary judgment (Doc. 24) filed by Defendant Choice Hotels International, Inc. are hereby **DENIED**.

                        **BY THE COURT**


                        **s/ James M. Munley**
                        **JUDGE JAMES M. MUNLEY**
                        **United States District Court**